FILED

2025 Jan-31  PM 06:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

# OF NORTHERN DISTRICT OF ALABAMA

# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff;** | ) | |
| **v.** | ) | **2:24-CR-00161-RDP-GMB** |
| | ) | |
| **HARMEL CODI,** | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS THE CRIMINAL INDICTMENT AGAINST THE DENFENDANT

**COMES NOW, the Defendant, Harmel Codi,** by and through her attorneys of record and move this Honorable Court to Dismiss the Criminal Indictment Against the Defendant, and in support thereof would show the following:

## STATEMENT OF JURISDICTION

At all times applicable to the Defendant's Motion to Dismiss, the actions associated herewith and the charges arising from the same occurred within the Jefferson County, Alabama in the Northern District of the Alabama or within such places as lending jurisdiction to the Northern District of Alabama and therefore this Court is the right and proper venue for the resolution of the Defendant's following Motion to Dismiss.

## STATEMENT OF APPLICABLE LAW

1

The Defendant relies upon the Religious Freedom and Restoration Act of 1993, 42 U.S.C. § 2000bb et seq.; see also 42 U.S.C. § 2000bb-3(a) (which mandates that all other federal laws be subject to the strictures of RFRA), hereinafter "RFRA", the Controlled Substances Act of 1970, 21 USC 13, 801, et. seq., hereinafter "CSA", the United State Constitution, United States Supreme Court case law, and the controlling case law of the 11th Circuit Court of Criminal Appeals.

## PROCEDURAL POSTURE:

That following the indictment by a Federal Grand Jury in the Northern District of Alabama, the Defendant is charged with crimes as otherwise set out in the Indictment secured by the Unites States Attorney for the Northern District of Alabama. That the Defendant, Harmel Codi, hereinafter "Ms. Codi",  has asserted that she is not guilty of said charges and now brings before this Court her motion to dismiss.

## ISSUES IN CONTROVERSY

1.      **Whether the Government is able to meet its burden under the Religious Freedom and Restoration Act of 1993; to wit: whether Mrs. Codi's alleged attempt to possess with intent to distribute dimethyltryptamine, hereinafter "Ayahuasca" constitutes a sincere exercise of religion which has been substantially burdened by the Government's current prosecution.**

2.      **Whether the Government will be able to demonstrate that it's enforcement of the Controlled Substances Act against Ms. Codi furthers a compelling governmental**

2

interest and is the least restrictive means of furthering its stated compelling governmental interest.

3.  **Whether the Defendant has been treated differently by the Federal Drug Administration as opposed to other similarly situated religious practitioners and thus subjected to selective prosecution by the United States Government, a violation of the Equal Protection Clause of the United States Constitution.**

<u>STATEMENT OF THE FACTS</u>

For the purposes of the Defendant's Motion to Dismiss, the Defendant adopts the Governments Statement of the Fact as set forth in the Indictment. The Defendant does not otherwise admit to any of the underlying charges and, more specifically re-asserts her plea of not guilty and maintains her of innocence to the charges set out in the indictment.

**ARGUMENT**

1.  **Whether the Government is able to meet its burden under the Religious Freedom and Restoration Act of 1993; to wit: whether Mrs. Codi's alleged attempt to possess with intent to distribute dimethyltryptamine, hereinafter "Ayahuasca" constitutes a sincere exercise of religion which has been substantially burdened by the Government's current prosecution.**[1]

---

[1] 42 U.S.C. § 2000bb et seq. (hereinafter, "RFRA"); see also 42 U.S.C. § 2000bb-3(a) which mandates that all other federal laws be subject to the strictures of RFRA.  More specifically, subsection 3 of RFRA, is entitled "Applicability" and subsection 3(a) entitled "In general," states as follows, "**This chapter applies to all federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993**" (emphasis added).  Subsection 3(b), entitled "Rules of construction," which instructs on how to deal with future laws, states as follows, "**Federal statutory law adopted after November 16, 1993, is subject to this chapter unless such law explicitly excludes such application by reference to this chapter**" (emphasis added).

The Defendant, Harmel Codi, has been charged with violations of the criminal provisions of the federal Controlled Substances Act. The Government will be unable to meet its burden under the federal Religious Freedom and Restoration Act of 1993 (hereinafter, "RFRA").[2]  As stated in greater detail below, Mrs. Codi's alleged attempt to possess with intent to distribute dimethyltryptamine constitutes a sincere exercise of religion which has been substantially burdened by the Government's current prosecution and the Government. The government will be unable to demonstrate that it's enforcement of the Controlled Substances Act against Ms. Codi furthers a compelling governmental interest and is the least restrictive means of furthering its stated compelling governmental interest.

A.    **The Government's Criminal Charges Against Harmel Codi are Subject to her Defense under RFRA.**

RFRA, a federal statute promulgated by Congress in response to the U.S. Supreme Court's decision in *Employment Div. v. Smith*,[3] "…supplies (to the federal courts) a rule of decision in cases where a person (like Mrs. Codi) finds himself in the unfortunate position of needing to choose between following the precepts of his faith and following the law."[4] In general, "…RFRA provides sincere religious objectors must be given a pass to defy obligations that apply to the rest of us (i.e. generally applicable and neutral laws), if refusing to exempt or accommodate them would impose a substantial burden on their sincere exercise of religion."[5]  However, RFRA's goal of religious accommodation for sincere religious exercises substantially burdened by the Government, despite a law's general applicability and neutrality, is not absolute.

---

[2] 42 U.S.C. §§ 2000bb et seq.
[3] 494 U.S. 872 (1990).
[4] *United States v. Christie*, 825 F.3d 1048, 1055 (9th Cir. 2016).
[5] *Christie*, 825 F.3d at 1055 (citing 42 U.S.C. § 2000bb-1(a)).

"The mere fact that [a person's] religious practice is substantially burdened by a governmental program does not mean that an exemption accommodating his practice must be granted."[6]  The Government is not bound to accommodate an otherwise substantially burdened and sincere religious exercise if it is able to demonstrate that its proposed criminal enforcement of the Controlled Substances Act[7] is in furtherance of a compelling governmental interest[8] and is the least restrictive means of furthering its states interest.[9]  However, if the Government is unable to make the required demonstration under RFRA, the "…courts are directed to order "appropriate relief" against the government and in favor of the religious objector."[10]

"In other words, RFRA gives each person a statutory right not to have his sincere religious exercise substantially burdened by the government, save for cases expressly denominated "[e]xception[al]."[11]  RFRA has an extremely broad application (expressly applies to all federal law, statutory or otherwise)[12] and may be asserted by a person, as a claim or defense, in a "judicial proceeding."[13]  Furthermore, "Standing to assert a claim or defense (under RFRA) shall be governed by Article III of the Constitution."[14]

Since RFRA allows its strictures to be asserted as a "claim or defense in a judicial proceeding," and if successful, instructs courts to order "appropriate relief against a government," it has been eloquently described as providing a person a "sword or a shield."[15]  In other words, as aptly described by the Ninth Circuit in *Christie*, "…If a person has a sufficiently

---

[6] Id. (citing *Thomas v. Review Bd.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)).
[7] 21 U.S.C. § 846, 841(a)(1) and (b)(1)(c).
[8] See 42 U.S.C. § 2000bb-1(b)(1).
[9] See 42 U.S.C. § 2000bb-1(b)(2).
[10] *Christie*, 825 F.3d at 1055 (citing 42 U.S.C. § 2000bb-1(c).
[11] Id. (citing 42 U.S.C. § 2000bb-1(b)).
[12] See 42 U.S.C. § 2000bb-3(a) ("Applicability")
[13] See 42 U.S.C. § 2000bb-1(c) ("Free exercise of religion protected") ("Judicial Relief").
[14] Id.
[15] See *Christie*, 825 F.3d at 1055.

realistic fear  that the government is going to punish him for exercising his religious beliefs in defiance of the law, he may unsheathe RFRA (the sword) and file a preemptive strike in an effort to subdue the government before it treads further."[16]  "Alternatively, if the government strikes first, for example, by indicting a person for engaging in activities that form a part if his religious exercise that is prohibited by law, the person may raise RFRA as a shield in hopes of breaking the government's charge."[17]  "In either scenario, a religious objection may have the effect if immunizing the objector's past conduct from official sanction-even though such conduct violated a law that is otherwise valid-and of ifying, in whole or in part, his continuing duty to comply with a generally applicable command."[18]

### 1.  <u>Jurisdiction over RFRA Claims and Defenses Lies Solely in Article III Courts</u>

As previously stated, RFRA, by its plain terns, vests jurisdiction over free exercise "claims and defenses," created thereunder, in "judicial proceedings."[19]  This clear statutory intention of solely vesting jurisdiction in the courts, was directly addressed in RFRA's extensive legislative record.[20]  Instead of protecting only practices "motivated" or "compelled" by religious belief, Congress used the phrase "exercise of religion," which is language of the First Amendment. [21]

---

[16] 825 F.3d 1048, 1055 (citing *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 425-27, 439, 126 S. Ct. 1211, 163 L.Ed.2d 1017 (2006) (granting a preliminary inunction under RFRA to a religious sect threatened with prosecution for past violations of the CSA; this case involved ayahuasca-based religious practitioners similarly situated, in all material respects, to Mrs. Codi); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (enjoining government from requiring full compliance with the Affordable Care Act of claimants who felt compelled to violate its commands for religious reasons)).

[17] Id. (citing Bauer v. United States, 84 F.3d 1549, 1559 (9th Cir. 1996) (vacating convictions so defendants could interpose RFRA as defense to having possessed marijuana in violation of the CSA); Wisconsin v. Yoder, 406 U.S. 205, 207, 234-35, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (striking down criminal convictions and nullifying  state compulsory attendance law as applied to religious objectors who invoked First Amendment defense to prosecution

[18] Id.

[19] See 42 U.S.C. § 2000bb-1(c).

[20] See *Religious Freedom and Restoration Act of 1991:Hearings on H.R. 2797 Before the Subcomm on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 102nd Cong. 2nd Sess. 128 (1992) (letter from Hon. Stehpen J. Solarz to Hon. Don Edwards).

[21] Robert F. Drinan and Jennifer L. Huffman, *The Religious Freedom and Restoration Act: A Legislative History*, 10 J.L. & Relig. 531, 537 (1993-94) (citing *Religious Freedom and Restoration Act of 1991:Hearings on H.R. 2797 Before the Subcomm on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 102nd Cong. 2nd Sess. 128 (1992) (letter from Hon. Stehpen J. Solarz to Hon. Don Edwards).

By carefully choosing language of the First Amendment, Congress intended to leave to "…the courts the job of determining on a case-by-case basis, whether or not a particular practice is indeed an exercise of religion."[22]  This notion is further validated in Subsection 3 of RFRA which states that RFRA applies "..to all federal law…statutory or otherwise, and whether adopted before or after November 16, 1993."[23]  Considering the foregoing, ultimate authority of whether to exempt an exercise of religion from federal laws, lies with the courts.

While administrative agencies are expected to consider RFRA claims and defenses in administering the law, their assessments under RFRA are not binding on the courts or individuals.[24]  In particular, the Drug Enforcement Administration is without jurisdiction to determine the extent of religious free exercise protections under RFRA. As an Article II Executive Branch Agency under the Department of Justice, the DEA lacks the constitutional authority to conduct a "judicial proceeding" contemplated by, and expressly mentioned, in the federal RFRA.[25]  As such, the DEA is unable to adjudge the merits of any "claim or defense" under the statute.

**2.   The Drug Enforcement Administration Lacks Jurisdiction to Decide RFRA Claims or Defenses**

As an inherently adverse party to the free  exercise claims of visionary religious practitioners (the DEA seeks to enforce the CSA as a "closed regulatory scheme"),[26] the DEA is by default unable to strike, "…sensible balances between religious liberty and competing prior governmental interests."[27]  Congress, finding that the "compelling interest test," as set out in

---

[22] Id.
[23] See 42 U.S.C. § 2000bb-3(a) (Applicability).
[24] See 42 U.S.C. § 2000bb-1(c) (Religious Exercise Protected)
[25] Id.

[26] See *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 430 (2006).
[27] See 42 U.S.C. § 2000bb(a)(5).

federal court rulings, struck such a balance and it therefore chose to limit the administration over free exercise rights created under RFRA, to the courts.[28]  As such, the rights created under RFRA are only ripe for adjudication in "judicial proceedings" and only when asserted as a "claim or defense" in such proceedings[29]  Therefore, the DEA has no binding authority to grant relief (i.e. exemptions) pursuant to RFRA- whether under the Controlled Substances Act or any other federal statute.

While the DEA has published a guidance document generally informing the public about its process for religious exemption petitions under the Controlled Substances Act (with RFRA specific inquiries intertwined),  this document (by its own terms) has no binding authority over religious practitioners generally or specifically as it relates to claims made pursuant to RFRA.[30] The DEA's guidance document clearly states, at the very end of the document,[31] that it "…does not bind the public in any way" and is "…intended only to provide clarity to the public regarding existing requirements under the law or department policies."[32]   As discussed in greater detail below, understanding the jurisdictional mandates of RFRA is crucial in this case, because although Mrs. Codi never filed an application for an exemption from the Controlled Substances Act with the DEA, she still retains her right to assert a valid and cognizable free exercise defense under RFRA.  Simply put, failure to file a petition for exemption with the DEA has no bearing on

---

[28] Id.

[29] See 42 U.S.C. § 2000bb-1(c).

[30] See **Exhibit A**, a true and correct copy of Drug Enforcement Administration, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom and Restoration Act (Revised)   (Nov.   20,   2020),   https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf.

[31] While the DEA's guidance document purports to be promulgated pursuant to Executive Order 13891, it fails to list any procedure for the public to petition for withdrawal or modification of the guidance document, including a failure to designate the officials to which petitions should be directed.  See Exec. Order No. 13891, Promoting the Rule of Law Through Improved Agency Guidance Documents, 84 Fed. Reg. 55, 235, Section 4(ii), October 9, 2019.

[32] See Exhibit A.

the extent of Mrs. Codi's free exercise rights or her ability to assert a free exercise defense in this judicial proceeding, the proper venue for such a defense under RFRA's express terms.[33]

Regardless of whether Mrs. Codi and/or her co-religionists filed a petition for exemption with the DEA, they clearly retain the right under RFRA, at any time, to file a claim (or assert a defense) in an appropriate jurisdiction (the courts) and seek "appropriate relief" from the strictures of the Controlled Substances Act, especially relief from prosecution under its criminal provisions.[34]   This relief by default would include Mrs. Codi's past activities related to the sacramental consumption and distribution of Ayahuasca. Should this Honorable Court find her exempt from the criminal provisions of the Controlled Substance Act, they would also be immunized from prosecution.[35]

Prospectively, this Court's adjudication affirming Mrs. Codi's past ayahuasca-based practices are congruent with the requirements of RFRA, will also exempt Mrs. Codi's future ayahuasca-based religious activities-subject to the Government's right to protect its interest in health and safety by the least restrictive means.  Unanimously, federal courts who have squarely addressed ayahuasca-based claims under RFRA, have both immunized the adherents' past ayahuasca-based conduct and entered orders requiring them to prospectively comply with certain civil (accounting and reporting) provisions of the Controlled Substances Act.  Such an adjudication represents a proper/delicate balancing of the relevant interests involved and as such, a task reserved only for the courts under RFRA.

---

[33] See 42 U.S.C. § 2000bb-1(c).
[34] See Id.
[35] See *Christie*, 825 F.3d at 1055.

As established by the expert affidavits attached hereto[36] and the discovery in this case, Mrs. Codi is a sincere religious practitioner whose exercise of religion involves the sacramental consumption of ayahuasca,[37] and which practice has been substantially burdened by the Government's current prosecution, causing immense and irreparable harm[38] to Mrs. Codi.  Under these facts, as stated in the attached expert reports, the Government clearly lacks an interest in protecting public health and safety sufficient to justify its current prosecution of Mrs. Codi under the Controlled Substances Act.

### 3.  <u>Mrs. Codi's Exercise of Religion has been Substantially Burdened by the Government's Current Prosecution</u>

To carry her burden under RFRA, Mrs. Codi must first present evidence showing the Government's prosecution against her (for attempting to possess with intent to distribute dimethyltryptamine in an Ayahuasca mixture) places a substantial burden on her exercise of religion (i.e. the sacramental consumption of Ayahuasca).[39]  Here, it is without question that the Government's prosecution places a substantial burden on Mrs. Codi's ability to engage in the sacramental consumption and distribution of Ayahuasca (her "exercise of religion").  In addition to prohibitive bond conditions and a looming prosecution against her, religious Sacrament addressed and shipped to Mrs. Codi has been seized without her consent.  Prior case law involving the seizure of ayahuasca, has consistently held such seizures constitute a substantial burden.[40]

---

[36] See **Exhibit B** (Expert report of Dr. Brad Stoddard, expert in entheogenic religions); **Exhibit C** (Expert report of Dr. Peter Hendricks of the University of Alabama Birmingham, expert in psychedelic science, medicine, and safety); **Exhibit D** (Expert report of Dr. Leanne Standish, expert and renowned Ayahuasca researcher)

[37] See **Exhibit B**.

[38] See *Tandon v. Newsom*, 141 S.Ct. 1294, 1287 (2021) (per curiam) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68, 208 L.Ed.2d 206 (2020) (per curiam)) (According to this line of cases, religious practitioners are "…irreparably harmed by the loss of free exercise rights "for even minimal periods of time").

[39] See 42 U.S.C. § 2000bb-1(a).

[40] *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 419 (2006) (Government conceded that seizing the UDV's ayahuasca constituted a substantial burden."); *Church of Holy Light of Queen v. Mukasey*,

As the evidence in this case makes clear, Mrs. Codi's practices involving the sacramental consumption of ayahuasca constitute a "exercise of religion" under the statute.[41]  By its own terms, the statute does not specifically define the term religion, only stating that "exercise of religion" means, "…religious exercise, as defined in section 2000cc-5 of this title."[42]  That section, contained in the Religious Land Use and Institutionalized Persons Act of 2000 states, "…The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[43]  While no single definitive test for religion exists within the federal courts,[44] there are many common elements courts examine when assessing whether a certain set of beliefs (and resulting practices) is "religious" and therefore cognizable under the First Amendment.  Those elements include: (1) Ultimate ideas; (2) Metaphysical beliefs; (3) Moral or ethical system; (4) Comprehensiveness; and (5) Accoutrements of Religion.[45]

Under the facts of this case, Mrs. Codi easily meets her burden under the statute.  First, as the attached expert report from Dr. Brad Stoddard clearly establishes, Mrs. Codi's dedication to consuming and serving ayahuasca (both stateside and with tribal peoples and shamans in Peru), a

---

615 F. Supp.2d 1210, 1218-19 (D. Or. 2009) ("It is obvious that prohibiting the use of Daime tea (ayahuasca) would substantially burden the exercise of plaintiffs' religion").

[41] *U.S. v. Meyers*, 906 F. Supp. 1494 (D. Wyo. 1995) (citing *Africa v. Commonwealth*, 662 F.2d 1025 (3d Cir. 1981); *Malnak v. Yogi*, 592 F.2d 197 (3d Cir. 1979); *United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir. 1983); *Founding Church of Scientology v. United States*, 409 F.2d 1146 (D.C. Cir. 1969); *Washington Ethical Soc'y v. District of Columbia*, 249 F.2d 127 (D.C. Cir. 1957); *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943); *Remmers v. Brewer*, 361 F. Supp. 537 (S.D. Iowa 1973); *Sherr v. Northport-East*, 672 S. Supp. 81 (E.D.N.Y 1987); *Jacques v. Hilton*, 569 F. Supp. 730, 731 (D.N.J. 1983); *Church of the Chosen People v. United States*, 548 F. Supp. 1247 (D. Minn. 1982); *Womens Services, P.C. v. Thone*, 483 F. Supp. 1022 (D. Neb. 1979), *aff'd*, 636 F.2d 206 (8th Cir. 1980); *Stevens v. Berger*, 428 F. Supp. 896, 899 (E.D.N.Y. 1977); *United States v. Kuch*, 288 F. Supp. 439 (D.D.C. 1968); *Fellowship of Humanity v. County of Alameda*, 153 Cal.App.2d 673, 315 P.2d 394, 401 (1957)).

[42] 42 U.S.C. § 2000bb-2(4).

[43] 42 U.S.C.§ 2000cc-5(7)(A).

[44] See *Theriault v. Carlson*, 495 F.2d 390, 395 (5th Cir. 1974) ("While it is difficult for the courts to establish precise standards by which the bona fides of a religion may be judged, such difficulties have proved to be no hindrance of denials of First Amendment protection to so-called religions which tend to mock established institutions and are obviously shams and absurdities and whose members are patently devoid of religious sincerity").

[45] See *U.S. v. Meyers*, 906 F. Supp. 1494, 1520 (D. Wyo. 1995).

Sacrament which for the last three thousand years has almost exclusively been used for religious purposes,[46] clearly proves her Ayahuasca-based activities constitute an "exercise of religion" under the statute.  Second, the Government's own reports, freely produced in discovery, openly admit that Mrs. Codi's possession, consumption, and distribution of Ayahuasca is limited to "ayahuasca retreats" in Georgia and Peru.[47]  Religious adherents of almost all ilk participate in spiritual/religious retreats of all kind, but all primarily aimed at some form of spiritual growth and development.

The Ayahuasca-based religious beliefs and practices adhered to by Mrs. Codi and her co-religionists, both domestically and in Peru, are fundamentally no different than other firmly established religious traditions which are founded upon a holy text.  In fact, Ayahuasca-based religious practices are at least one thousand (1,000) years older than Christianity and still practiced today by the indigenous peoples of the Amazon Rainforest.  For Mrs. Codi and other similarly situated religious practitioners, an Ayahuasca retreat is equivocal to going to a Sunday service at a Christian church; and her consumption of Ayahuasca no different than reading a bible as the primary religious/mystical experience effectuated by the Ayahuasca-both religious practices are intended to answer all manner of life questions-ultimate, general, and specific.  This fact—the religiosity inherent in religious practices which utilize consciousness-altering sacraments, such as the indigenous traditions of  North and South America, was correctly observed by the District Court of Wyoming in *Meyers*, when the court aptly stated:

> "In other religions, such as Native American religions, ancient
> Mexican religions, and primitive tribal religions, mind-altering
> plants are sacred.  The plants are not, however, the focus of these
> religions.  Rather, they are a means to an end, the end being to
> attain a state of religious, spiritual, or revelatory awareness.  When
> believers achieve this state, they are privy to all manner of visions

---

[46] See **Exhibit B**.
[47] See **Exhibit E** (Affidavit of Harmel Codi).

12

and revelations concerning the past, present, and future.  After experiencing these states—which are intense and transitory—they rely on their visions and revelations to guide their actions."[48]

In his latest book entitled "The Law of Entheogenic Churches in the United States (Vol. II): The Definition of Religion under the First Amendment," counsel for Harmel Codi, George Lake, Esq., writes extensively about the nature of the primary religious/mystical experience reliably effectuated through the consumption of entheogens.[49]  In his book, Mr. Lake provides a comprehensive analysis of how modern scientific and medical studies have consistently shown that organic alkaloids such as psilocybin/psilocin, mescaline, dimethyltryptamine, and many more, reliably effectuate primary religious/mystical experiences which are deeply profound and many times, ineffable.

These findings further confirmed what anthropologists, archeologists, and historians have long-known: that earth-based entheogens have been harvested and used by humans on all major continents since time immemorial.  In fact, perhaps the world's most revered anthropologist who spent his entire career studying and writing about ancient shamanism, Dr. Michael Winkleman, has opined that the sacramental consumption of earth-based entheogens is our "shared worldwide religious heritage" and further states as follows:

"Our various contributions here on the entheogenic elements of

religions of the past—and their descendants in the present—

provide ample data for assertions about a common worldwide basis

---

[48] *Meyers*, 906 F.Supp. at 1505.
[49] See Lake, G. (2022). The Law of Entheogenic Churches (Vol. II): The Definition of Religion under the First Amendment.  https://www.amazon.com/Law-Entheogenic-Churches-Definition-Amendment/dp/B09SL33168.   The term "entheogen" is a term used as a substitute for the word "psychedelic."  While the word "psychedelic" means "mind manifesting," the word "entheogen" means "awakening or experiencing the Divine within, usually through the consumption of a conscious-altering substance of earth-origin (although the substance could also be synthetic)."  Considering the relevant definitions, entheogen is used in place of psychedelic when the use of a substance is effectuated with religious or spiritual intent versus a purely secular intent, such as a psychedelic that is taken recreationally versus one taken in the context of a religious ceremony or retreat.

of religious experiences in psychedelic and their influences in the formation of humanity's religions.  The roots of entheogenic religions in shamanistic practices are not just a relic of the past, but also a part of the present, as exemplifies in the many contemporary ayahuasca practices and churches.  Perhaps, entheogenic religion is here to stay.  It is after all part of our evolution and nature.  One can hope that this nascent stage of reemergence will move beyond this into a entheogenic revival, a global movement of spiritual acceptance across traditions that is worthy of the sacred mushrooms' long history."

Many courts to address religious use of ayahuasca and other Controlled Substances Act claims under RFRA, have observed the relatively thin market for non-religious ayahuasca use, as it (dimethyltryptamine) has both been traditionally used that way for thousands of years in the Amazon Rainforest and as well can effectuate some relatively unpleasant side effects which mostly deter its misuse and abuse.[50]  The attached expert report from Dr. Peter Hendricks, an esteemed psychedelic researcher from the University of Alabama Birmingham, clearly buttresses the assertion that Mrs. Codi's beliefs and activities with ayahuasca is, and always been, sincere and religious in nature.[51]   In Dr. Hendrick's opinion, the scientific record shows that, statistically

---

[50] See *United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016) (comparing the potential diversion of cannabis to that of peyote and ayahuasca and concluding that, "As courts have repeatedly emphasized, cannabis differs critically from peyote and hoasca because there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote or hoasca") (citing *O Centro Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3dd 973, 1020 (10th Cir. 2004) (en banc) (McConnell, J., concurring); *Olsen v, Drug Enf't Admin.*, 878 F.2d 1458, 1463-64 (D.C. Cir. 1989); *Church of the Holyt Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210, 1220-21 (D. Or. 2009), *vacated on other grounds sub nom. Church of the light of the Queen v. Holder*, 443 Fed.Appx. 302 (9th Cir. 2011); *United States v. Lepp*, 2008 WL 3843283, at *11 (N.D. Cal. Aug. 14, 2008).
[51] See Exhibit C.

speaking, much more likely than not Mrs. Codi's relationship with Ayahuasca is both a religious/spiritual one and based upon sincerely held beliefs.[52]  As such, any assertion that Mrs. Codi is not sincere in her ayahuasca-based religious beliefs and practices is inconsistent with the overwhelming consensus of anthropological,[53] scientific, and medical writings and studies in relation thereto.

Relatedly, any notion that Mrs. Codi did anything to undercut her sincerity by charging some members of her community money to religious retreats, is incongruent with long-standing U.S. Supreme Court precedent.[54]  In fact, Mrs. Codi, a well-educated and well-employed African-American woman, expended much more time and resources into her religious activities than she ever received in reimbursements for her time and money.[55]  Moreover, the majority of her religious training and practices occurred with her tribal elders in Peru.[56]  Her dedication to global travel in these regards, versus predominantly remaining in  the U.S. to practice with ayahuasca, shows tremendous dedication on Mrs. Codi's behalf, especially considering the copious amounts of unwarranted scrutiny and detainment she suffered coming back into her own country.[57]  Finally, the two experts who were able to conduct personal interviews with Mrs. Codi, opined that they found her to be sincere in her presentment.[58]

As the foregoing makes clear, Mrs. Codi's activities related to ayahuasca were, and always have been, in furtherance of her "religious exercise," as that term is defined in prevailing

---

[52] Id.

[53] See Winkleman, Michael. "Introduction: Evidence for Entheogen Use in Prehistory and World Religions." Journal of Psychedelic Studies, vol. 3, no. 2, 2019, pp. 43-62. DOI 10.1556/2054.2019.024. Accessed 15 Nov. 2024).

[54] See *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) ("It is plain that a religious organization needs funds to remain an going concern.  But an itinerant evangelist, however misguided and intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help defray expenses or to sustain him.  Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their way.")

[55] See Exhibit E.

[56] Id.

[57] Id.

[58] See Exhibits B,D.

First Amendment jurisprudence.  Furthermore, Mrs. Codi's sincerity in her religious beliefs, judged through her actions in dedicating the amount of time, effort, and resources she expended on both travelling to Peru and holding religious ceremony in the United States, is without question.  Federal courts to have addressed materially similar ayahuasca claims under RFRA, have almost universally noted the negative (emetic) side effects of ayahuasca such as vomiting, diarrhea, and nauseousness-all of which make Ayahuasca a highly unlikely candidate for recreational use.[59]   Plainly, Mrs. Codi is a person who was and has always been engaged in an "exercise of religion" when in possession of Ayahuasca.

2.    **Whether Government will be able to demonstrate that it's enforcement of the Controlled Substances Act against Ms. Codi furthers a compelling governmental interest and is the least restrictive means of furthering its stated compelling governmental interest.**

The Government will be unable to show a compelling governmental interest in enforcing the criminal provisions of the federal Controlled Substances Act.[60]  The Government's interest in enforcing the Controlled Substances Act contrary to RFRA mandates, is the "health and safety" of the citizens.  However, every federal court to ever address the "compelling governmental interest" prong of an ayahuasca-based claim under RFRA, has consistently found the Government woefully unable to meet its evidentiary burden in these regards.[61]   Sometimes this failure was due to the Government's inability to focus their arguments,[62] while others were due

---

[59] *O Centro Espirita Beneficiente v. Ashcroft*, 342 F.3d 1170, 1182-83 (10th Cir. 2003); *Church of Holy Light of Queen v. Mukasey*, 615 F.Supp. 2d 1210 (D. Or. 2009); See Exhibit C.
[60] See 42 U.S.C. § 2000bb-1(b).
[61] See *O Centro Espirita Beneficiente v. Ashcroft*, 342 F.3d 1170, 1182-83 (10th Cir. 2003); *Church of Holy Light of Queen v. Mukasey*, 615 F.Supp. 2d 1210 (D. Or. 2009).
[62] *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006).

to a lack of sufficient evidence the ayahuasca, as consumed in those cases, implicated such an interest.[63]

Attached hereto as Exhibit D, is the expert report of Dr. Leanna Standish.  Dr. Standish is the only doctor currently working in tandem with the Government to conduct research on ayahuasca in the United States.  In her professional opinion, Mrs. Codi's religious practices do not implicate a "compelling governmental interest" and therefore do not cause her any significant or abnormal health and safety concerns.[64]  Considering the foregoing, the Government's ability to make the appropriate demonstration, as required by the statute, is undoubtedly questionable—as any assertion to the contrary lacks congruence with most, if not all, scientific/medical studies available on the issue.[65]

In addition to the lack of safety issues inherent in Mrs. Codi's religious practice, the Government has no evidence to demonstrate that Mrs. Codi has ever allowed any of the DMT in her possession to be diverted to non-religious use.  In fact, the government's own reports indicate that she distributed her ayahuasca at spiritual retreats in Georgia. The Government also lacks evidence that Mrs. Codi's practices related to ayahuasca retention and distribution created a significant risk of the Ayahuasca being diverted outside of the religious context.  As such, it will be unable to demonstrate, as required by the RFRA statute, an interest "compelling" enough to enforce the criminal provisions of the Controlled Substances Act against her- especially for reasons related to diversion.

In sum, the charges pending against Mrs. Codi for violations of the federal Controlled Substances Act[66] should be dismissed.  The evidence clearly establishes both the religiosity

---

[63] *Church of Holy Light of Queen v. Mukasey*, 615 F. Supp.2d 1210 (D. Or. 2009).
[64] See Exhibit D.
[65] Id.; See Exhibit C.

17

inherent in Mrs. Codi's beliefs and practices related to ayahuasca, as well as her sincerity in same. Furthermore, the Government will be unable to meet its burden of demonstrating a "compelling governmental interest" in its current prosecution of Mrs. Codi under the Controlled Substances Act, and that such a substantial burden constitutes the "least restrictive means" of furthering that interest. Lastly, every federal court which has had the opportunity to conduct a RFRA analysis in regards to ayahuasca-based religious practices, has held the Controlled Substances Act must yield under RFRA, and was fashioned in a way that would accommodate the particular adherents' practices involving dimethyltryptamine.[67] Accordingly, Mrs. Codi has herein asserted a successful RFRA defense under the statute, and therefore, the Controlled Substances Act must yield to the extent enforcement of its strictures (particularly its criminal provisions) places a "substantial burden" upon Mrs. Codi's ayahuasca-based religious practices. Therefore, the Government's criminal prosecution should be **DISMISSED**.

3. **Whether the Defendant has been treated differently by the Federal Drug Administration as opposed to other similarly situated religious practitioners and thus subjected to selective prosecution by the United States Government, a violation of the Equal Protection Clause of the United States Constitution.**

In addition to the foregoing defenses, Harmel Codi's criminal charges should be dismissed because the current prosecution is being levied against Mrs. Codi on a constitutionally suspect basis. More specifically, and as stated in greater detail below, there is a clear pattern of the federal government failing to prosecute similarly situated ayahuasca-based religious practitioners

---

[67] *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of Holy Light of Queen v. Mukasey*, 615 F. Supp.2d 1210 (D. Or. 2009).

18

who are male and Caucasian or Latino.  In fact, the Eleventh Circuit has fostered the most egregious ayahuasca cases in the country![68]

To establish that a prosecution is improperly selective, a defendant must "…satisfy a "demanding" burden," as a presumption exists that a prosecutor has not violated equal protection principles."[69]  However, prosecutorial decisions, under the Due Process Clause of the Fifth Amendment, may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification.[70]  Accordingly, a "…defendant asserting that she was selectively prosecuted must show "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose."[71]

The first prong of the above analysis requires a defendant to show that "similarly situated individuals were not prosecuted."[72]  Next, a defendant must show that, "[t]he discriminatory purpose prong requires that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."[73]  To meet this burden on an evidentiary basis, a defendant must, "…present sufficient facts to create a reasonable doubt about the constitutionality of a prosecution."[74]  As stated in greater detail below, the evidence in this case clearly establishes both prongs of the selective prosecution test and rises to the level of creating a reasonable doubt about the constitutionality of the current prosecution.

---

[68] See *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*, 92 F.4th 953 (11th Cir. 2023).
[69] See *United States v. Brantley*, 803 F.3d 1265, 1272 (11th Cir. 2015) (citing *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011); *United States v. Smith*, 231 F.3d 800, 806 (11th Cir. 2000)).
[70] Id.
[71] See *United States v. Brantley*, 803 F.3d 1265, 1272 (11th Cir. 2015) (citing *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011); *United States v. Smith*, 231 F.3d 800, 808 (11th Cir. 2000)).
[72] Id. (citing *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011); *United States v. Smith*, 231 F.3d 800, 809 (11th Cir. 2000)).
[73] Id. (citing id. (quoting *Wayte v. United States*, 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.E.2d 547 (1985)).
[74] Id. (Id. quoting United States v. Silien, 825 F.2d 320, 322 (11th Cir. 1987)).

At the outset, counsel for Mrs. Codi would like to observe the complete lack of prosecution, in the federal system, of Caucasian or Latino, male, ayahuasca-based religious practitioners.[75] Conversely, when ayahuasca seized is addressed to female ayahuasca-based practitioners, particularly African-American women, such as Mrs. Codi, the Government has swiftly commandeered both state and federal authorities to arrest and prosecute these demographics of ayahuasca-based religious practitioners.[76]

In late 2021, the Government, by and through the Department of Homeland Security and Customs and Border Patrol, intercepted a package containing ayahuasca and addressed to the residence of two ayahuasca-based religious practitioners, Anne Kopicko and Sienna Butler (both Caucasian females) in North Carolina. Instead of simply seizing the ayahuasca and leaving it be, agents from the Department of Homeland Security chose to drive multiple hours each way, deep into the mountains of North Carolina to ensure that these ladies were arrested viz-a-viz a controlled delivery. The Government agents in that case, as in this case, did everything needed to try and secure prosecution against the two female religious practitioners, save and except

---

[75] See *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*, 92 F.4th 953 (11th Cir. 2023) (Soul Quest led by a white male, Chris Young, who operated Soul Quest, a Florida-based non-profit church, for approximately eight years with the full knowledge and tacit acceptance of the U.S. Government); *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) (UDV branch in U.S. led by Jeffrey Bronfman, a white male and heir to the Seagram's liquor fortune did not face arrest or prosecution despite multiple gallons of ayahuasca being addressed to and received at his home); *Church of Holy Light of Queen v. Mukasey*, 615 F. Supp.2d 1210, 1218-19 (D. Or. 2009) (the Santo Daime leader, Johnathan Goldman, also a white male, was arrested and charged, but not prosecuted for ayahuasca-related charges after the DEA raided his home in 1999- charges were dropped after the Church filed a civil action against the U.S. Government); *Iowaska Church of Healing v. Wefel*, 105 F.4th 402 (D.C. Cir. 2024) (an ayahuasca-based church in Iowa, led by Caucasian's, which admitted to the DEA that it engaged in ayahuasca-based religious practices, asking for their grace); *Kamentsa Inga Church-Soul of the Hummingbird, Inc. et al. v. Merrick Garland*, et al., Case No. 4:23-cv-04173 (S. D. Tex. 2023) (Texas-based ayahuasca led by Taita (preacher/pastor) from Columbia had multiple packages of ayahuasca seized at the border without arrest or prosecution); *The Church of the Eagle and Condor et al. v. Merick Garland, et al.*, Case No. 2:22-cv-01004 (D. Ariz. June 9, 2022) (The Church of the Eagle and Condor is an ayahuasca-based church located in Arizona and led by a Columbian-American physician, Dr. Joseph Tafur who, after having multiple packages of ayahuasca seized at the border, sued the federal government in 2022, resolving the case out court in 2024 with the authority from the Government to import and distribute ayahuasca under RFRA).

[76] See *State of North Carolina v. Siena Butler*, File No. 21 CRS050511-12 (N.C. Gen. Ct. Just. 2022); *State of North Carolina v. Anne Elizabeth Kopicko*, 21 CR050509-10 (N.C. Gen. Ct. Just. 2023).

signing the warrant, cuffing the practitioners, and filing the charging documents.  Their case remains pending in Yancey County, North Carolina.

Despite leaving the prosecution of Butler and Kopicko to the state attorneys in Yancey County, it seems the government has chosen to take their efforts a bit further in this case, and charge Mrs. Codi, an African American ayahuasca-based religious practitioner, in federal court. These facts alone make the hierarchy of prosecutorial selectivity begin to show itself.  However, there is more.

As explained in Mrs. Codi's Motion to Dismiss under the federal Religious Freedom Act, a religious practitioner's failure to file a petition for exemption with the DEA has no bearing on their ability to assert a valid free exercise defense under RFRA.  Any suggestion by the Government to the contrary, constitutes further evidence that Mrs. Codi's prosecution, as an African American woman, is constitutionally suspect.  More specifically, the Government, through the DEA or otherwise, has never enforced or sought through the courts to enforce the criminal provisions of the Controlled Substances Act.  On the contrary, the Government in dealing with the claims of other similarly situated (but Caucasian or Latino male) religious practitioners, has either invited them to file a petition for exemption and/or allowed them to assert RFRA claims in civil court with impunity under the Controlled Substances Act, despite their failure to petition for an exemption as outlined in the DEA's guidance document.[77]

---

[77] See *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*, 92 F.4th 953 (11th Cir. 2023) (Soul Quest, a Florida-based ayahuasca church led by a white male, Chris Young, was invited to file a petition for exemption with DEA after the agency was fully aware of the church's prolific ayahuasca-based religious activities.  DEA received its petition for exemption approximately a year later and failed to address the petition for approximately three years.  The church, after three years, eventually sued the Government under RFRA as a means to prompt the DEA to investigate and rule on their petition.  The church operated at full capacity during the entire pendency of the DEA's three year process.  A death occurred at the church during the DEA's three year delay tactic; *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) (UDV branch in U.S. led by Jeffrey Bronfman, a white male and heir to the Seagram's liquor fortune, sued the Government over right to consume Ayahuasca with no prior petition to DEA); *Church of Holy Light of Queen v. Mukasey*, 615 F. Supp.2d 1210, 1218-19 (D. Or. 2009) (the Santo Daime leader, Johnathan Goldman, also a white male, was arrested and charged, but not prosecuted for ayahuasca-related charges

Counsel for Mrs. Codi, despite over five years of scholarship in entheogen-based free exercise claims, is unaware of any case wherein the Government has criminally prosecuted an ayahuasca-based religious practitioner, prior to the current proceedings against Mrs. Codi.  To the best of counsel's knowledge, all other federal cases involving federal RFRA claims by similarly situated (but Caucasian or Latino) religious practitioners, were given grace by the agency and resolved said claims in civil court.   Instead of trying to explain why Mrs. Codi's failure to file a petition for exemption with the DEA has any bearing on the validity of her RFRA defense, the Government should explain why Mrs. Codi's failure bolsters her prosecution in any way, while RFRA claims asserted by other similarly situated religious practitioners, were not attacked for their failure to do so.

Perhaps the greatest and most glaring evidence of selective prosecution in this instance is the juxtaposition of the facts of this case, to those of *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*, 92 F.4th 953 (11th Cir. 2023).  The following is a brief resuscitation of the material facts:[78]

- Soul Quest was a Florida-based non-profit corporation whose members practiced their religion using Ayahuasca (containing dimethyltryptamine);

---

after the DEA raided his home in 1999- charges were dropped after the Church filed a civil action against the U.S. Government.  Church never filed a petition for exemtion with DEA); *Kamentsa Inga Church-Soul of the Hummingbird, Inc. et al. v. Merrick Garland*, et al., Case No. 4:23-cv-04173 (S. D. Tex. 2023) (Texas-based ayahuasca led by Taita (preacher/pastor) from Columbia had multiple packages of ayahuasca seized at the border without arrest or prosecution.  Church never filed a prior petition with the DEA and filed suit shortly after Sacrament seizures); *The Church of the Eagle and Condor et al. v. Merick Garland, et al.*, Case No. 2:22-cv-01004 (D. Ariz. June 9, 2022) (The Church of the Eagle and Condor is an ayahuasca-based church located in Arizona and led by a Columbian-American physician, Dr. Joseph Tafur who, after having multiple packages of ayahuasca seized at the border, sued the federal government in 2022 and resolved the case out court with government in 2024.  Church never filed a prior petition with the DEA).

[78] *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*, 92 F.4th 953, 959-64 (11th Cir. 2023)

- Chris Young, the founder and chief executive during its existence, is a white male and professed ayahuasca-based religious practitioner;

- In order to acquire dimethyltryptamine, Soul Quest imported plant materials containing the substance from the Netherlands;[79]

- In 2016, the DEA became aware of Soul Quest and its operations by way of its website, and soon thereafter sent a letter to the Church suggesting it apply for an exemption under RFRA;

- Approximately a year later, Soul Quest filed a petition for exemption under RFRA via their legal counsel;

- On Easter Sunday in 2018, a Soul Quest member died during a weekend ayahuasca retreat at the Church in Orlando, Florida.  His death was a cause of increased sodium levels which were triggered by the use of secretion from a South American frog (called Kambo and is unscheduled in the United States).[80]  The Government, while undoubtedly aware of this incident (it was all over the news and later mentioned in a DEA letter to Soul Quest's counsel[81]), did nothing to prevent Soul Quest from operating even after learning of a death occurring at the church;

- Instead of acting to arrest and prosecute Soul Quest's leader, Chris Young, the Government chose to do absolutely nothing for three (3) years after receiving the sworn petition of exemption submitted by Chris Young (o/b/o Soul Quest).  Because the DEA's Guidance Document mandates that applicants give sworn statements in the

---

[79] See **Exhibit E** (Copy of the Government's Denial Letter to Soul Quest).
[80] See **Exhibit G** (https://www.ajc.com/news/national/charges-filed-after-death-ayahuasca-church/N49bd39evkLCqXV8PXeKlM/  (Accessed November 12, 2024)).
[81] See *Soul Quest Mother of Earth Church, Inc. et al. v. Merrick Garland, et al.*, Case No. 6:20-cv-00701, Document 31-14 (M.D. Fla. May 7, 2021) (DEA Denial Letter to Soul Quest, attached hereto as Exhibit F).

23

petition for exemption, it undoubtedly had sworn proof from Mr. Young himself, confessing his church engaged in activities which required they import, possess, and distribute dimethyltryptamine via ayahuasca-based religious ceremonies. In fact, as this Honorable Court could imagine, the petition mandates an applicant to highlight those specific activities in great detail;

- Finally, after three years, the death of a twenty-two-year-old man, and still no response or contact with the Government, Soul Quest filed a Complaint in the Middle District of Florida. The lawsuit sought to vindicate the church members' right under RFRA to sacramentally consume ayahuasca, as the Government preferred radio silence over action;

- Shortly after suit was filed, the DEA and Soul Quest agreed to stay the civil case pending a thorough but timely investigation into the claims made in the exemption petition;

- Upon conclusion of their investigation, the DEA denied Soul Quest's petition via the Denial Letter it entered into the Court record; In response, Soul Quest amended its complaint seeking to challenge the DEA's decision;

- After losing on an erroneous procedural argument in the District Court, Soul Quest appealed twice to the Eleventh Circuit, losing both times despite its insistence on RFRA supremacy;

- After all of the above, the Government continued to do nothing to stop Soul Quest from importing or distributing dimethyltryptamine to its members;

- Finally, in late 2024, Soul Quest's existence as a Church came to an abrupt halt when the family of the man killed in 2018 won a $15.5 million dollar judgment in Florida state court against the church and Chris Young.[82]

The *Soul Quest* case, occurring also within the federal Eleventh Circuit, shows a deep and sharp contrast between how the Government has chosen to prosecute ayahuasca-based religious practitioners who are otherwise "similarly situated."  Here, Mrs. Codi is accused of committing the same underlying offense, the importation, possession, and distribution of dimethyltryptamine, a Schedule I substance.  Moreover, both Mrs. Codi and her Caucasian and Latino male counterparts claim to engage in the same type of religious activities.  Despite these marked similarities in committing the alleged underlying offense, Caucasian and Latino males have almost uniformly been allowed to resolve their RFRA claims in civil courts, as opposed to Mrs. Codi, who has had to pay hundreds of thousands of dollars just to try and preserve the last bastion of freedom she may have.

Time and time again, the Government has literally had direct proof of similarly situated Caucasian and Latino males engaging in the importation, possession, and distribution of dimethyltryptamine, under the same statutory provisions used to charge Mrs. Codi, yet do nothing but try and resolve the claims through the civil court system.  Not one of the cases involving these demographics ended in arrest and prosecution, and in fact, save and except Johnathan Goldman of the Santo Daime, spent not one day in jail.  Here, not only has Mrs. Codi had to spend several days or more in jail and pay $150,000.00 in bond money to secure her

---

[82] See **Exhibit H**  (https://www.wftv.com/news/local/jury-judge-order-orange-county-ayahuasca-church-pay-15m-after-mans-death/5ME2OINOU5GPZGJHALKHPFZYA4/ (Accessed November 12, 2024)).

release on state charges (possessing with intent to distribute a _synthetic_ substance),[83] she is now having to face a federal prosecution for engaging in the exact same conduct.

There is no question the Government's evidence in this case is lacking at best, especially when compared to the robust, admissible, and direct evidence the Government had against Mrs. Codi's Caucasian and Latino male counterparts.   Whether it have been a sworn declaration from a church leader who oversaw a death occur at his religious vigil or a Complaint filed in federal court, all the prior cited cases saw Mrs. Codi's male and Caucasian or Latino counterparts admitting in federal court filings, to committing the "same basic crime" in "substantially the same manner" as Mrs. Codi, with impunity (despite the direct and uncontroverted nature (confession) of the evidence the Government possessed).  Here, the Government is charging Mrs. Codi for "attempting" to possess and distribute dimethyltryptamine yet have no direct evidence she was ever in possession of anything more than an unopened package of brown sugar packed with a tracking device.

This type of decision making is not reasonable and bears no relation to any known or rational law enforcement priorities.  It is hard to imagine why prosecuting Mrs. Codi for engaging in the same basic crime would have a stronger deterrence value than going after a potential defendant such as Jeffrey Bronfman, heir to Seagram's liquor fortune and public figure. Moreover, Chris Young of Soul Quest was on the local news in Orlando at least once discussing the church's practices and advertising the church's offerings on the internet.  Arresting and

---

[83] These charges, while conveniently dropped after the Government acquired an indictment on Mrs. Codi, were completely bogus and are indicative of both the state and federal government's complete indifference to making law enforcement and prosecutorial decisions without the requisite competency to understand the nature of their actions. More specifically, dimethyltryptamine found in ayahuasca paste, as it is in the brew, originates from plant materials found in the South American jungle.  There is nothing synthetic about the substance whatsoever.  In fact, dimethyltryptamine has been identified in human brains and, while the exact purpose is inconclusive at this time, it is theorized generally that dimethyltryptamine mediates our sense of reality.  In short, dimethyltryptamine is native and endogenous to both our bodies and the earth.

prosecuting these potential defendants would undoubtedly have a stronger deterrence effect than Mrs. Codi, who has remained humble and preferred to work primarily with her established church community.  The message clearly conveyed by this course of action is that Caucasian and Latino males are free from prosecution when engaging in these types of offenses, but African Americans should be fearful of engaging in same. Coincidentally, as noted by religious expert, Dr. Brad Stoddard, his recent research has revealed the Government's strategy has paid off- African American religious practitioners utilizing dimethyltryptamine are scared to be open and express their religious affiliations and are deterred from starting their own church communities.[84] It is not a valid exercise of prosecutorial discretion in deciding, as the Government has evidently done here, to rely on an unconstitutional prosecution of an African American female as a means of providing further deterrent value against African American communities engaging in the same religious practices, congruent with their constitutional rights under the First Amendment and RFRA.

Considering the foregoing, it is clear the Government's current prosecution is aimed, at least in part, at deterring Mrs. Codi and similarly situated African American religious practitioners from exercising their First Amendment rights to free exercise of religion, freedom of speech and expression, freedom of association, and their rights under RFRA.  And as previously stated, the Government has chosen time and time again to refrain from prosecuting similarly situated Caucasian and Latino Ayahuasca practitioners,[85] even when additional crimes are potentially implicated.[86]  Because the Government's prosecution of Mrs. Codi clearly

---

[84] See Exhibit B.
[85] See FN 41, supra.
[86] See FN 44, supra.

constitutes a "selective prosecution" under *Brantley*[87] and its progeny, it is unconstitutional and thus requires the criminal charges pending against Mrs. Codi be **DISMISSED**.

      **WHEREFORE, premises considered,** the Defendant, Harmel Codi, by and through her attorneys of record and moves this Honorable Court to Dismiss the Criminal Indictment Against the Defendant

Respectfully submitted,

/s/ Jason L. Wollitz

_____

Jason L. Wollitz, Esq.

One Independence Plaza

Suite 305

Homewood, Alabama 35209

205-541-6033

jasonwollitz@gmail.com

---

[87] 803 F3d 1265 (11th Cir. 2015).

## <u>CERTIFICATE OF SERVICE</u>

       **COMES NOW, Jason L. Wollitz, Attorney at Law,** and do hereby certify that I have served a copy of the foregoing on this the 31st day of January, 2025 via electronic transmission, telephone notification or hand delivery to the United States Attorney.

Respectfully Submitted,

/s/ Jason L. Wollitz

_____

Jason L. Wollitz, Esq.

One Independence Plaza

Suite 305

Homewood, Alabama 35209

205-541-6033

jasonwollitz@gmail.com