FILED
2025 Mar-18 AM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## OF NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff;** | ) | |
| **v.** | ) | **2:24-CR-00161-RDP-GMB** |
| | ) | |
| **HARMEL CODI,** | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF HER MOTION TO DISMISS THE INDICTMENT PURSUANT TO THE FEDERAL RELIGIOUS FREEDOM AND RESTORATION ACT OF 1993 AND FOR SELECTIVE PROSECUTION

**COMES NOW** defendant, Harmel Deanne Codi, by and through her undersigned counsel, and files this Reply Brief in opposition to the Government's Response brief and in support of her Motion to Dismiss the indictment pursuant to the federal Religious Freedom and Restoration Act of 1993[1] and selective prosecution.  In support of her Reply, defendant submits the following:

---

[1] See 42 U.S.C. § 2000bb et seq.

## STATEMENT OF JURISDICTION

At all times applicable to the Defendant's Motion to Dismiss, the actions associated herewith and the charges arising from the same occurred within the Jefferson County, Alabama in the Northern District of the Alabama or within such places as lending jurisdiction to the Northern District of Alabama and therefore this Court is the right and proper venue for the resolution of the Defendant's following Motion to Dismiss.

## STATEMENT OF APPLICABLE LAW

The Defendant relies upon the Religious Freedom and Restoration Act of 1993, 42 U.S.C. § 2000bb et seq.; see also 42 U.S.C. § 2000bb-3(a) (which mandates that all other federal laws be subject to the strictures of RFRA), hereinafter "RFRA", the Controlled Substances Act of 1970, 21 USC 13, 801, et. seq., hereinafter "CSA", the United State Constitution, United States Supreme Court case law, and the controlling case law of the 11th Circuit Court of Criminal Appeals.

## PROCEDURAL POSTURE:

That following the indictment by a Federal Grand Jury in the Northern District of Alabama, the Defendant is charged with crimes as otherwise set out in the Indictment secured by the Unites States Attorney for the Northern District of

Alabama. That the Defendant, Harmel Codi, hereinafter "Ms. Codi", has asserted that she is not guilty of said charges and now brings before this Court her motion to dismiss.

## I. Dismissal of Indictment under Federal Religious Freedom and Restoration Act of 1993.

The Government in this case has failed to present any evidence which would allow it to effectively rebut Mrs. Codi's showing that, based upon the preponderance of the evidence, her Ayahuasca-based beliefs (and resulting practices) constitute an "exercise of religion" which has been "substantially burdened" (as those terms are defined in the RFRA statute)[2] by the Government's prosecution in this case.  In support of her burden, Mrs. Codi has proffered her affidavit,[3] expert reports from religion scholar Dr. Brad Stoddard[4] and Dr. Peter Hendricks[5] (opines that from a medical/scientific perspective, recreational use of Ayahuasca is statistically rare), and points to the evidence contained in the Government's discovery file as it also supports her RFRA defense.

Although the Government admits that RFRA requires a "case specific" inquiry,[6] it has failed to use the procedural tools available to acquire the "case

---

[2] See 42 U.S.C. § 2000bb-2.
[3] See Doc # 32-6; **Exhibit A** (executed copy of Mrs. Codi's affidavit).
[4] See Doc # 32-1; 32-2.
[5] See Doc # 32-3; 32-4.
[6] See Doc # 37 (Government's Response in Opposition); *Gonzales v. O Centro Espirita Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006).

specific" evidence (i.e. Mrs. Codi's Ayahuasca-based beliefs and practices) needed to both effectively rebut Mrs. Codi's burden and support the demonstration required of it under the statute.   In the context of entheogen-based free exercise claims arising under the Religious Freedom and Restoration Act, there are essentially four relevant inquiries: 1) Are the claimant/defendants' beliefs and practices both sincere and an "exercise of religion,"; 2) Does the alleged Governmental actions or conduct constitute a "substantial burden" on the claimant/defendant's "exercise of religion,"; 3) Can the Government demonstrate a "compelling governmental interest" in protecting the health and safety of those who commune with claimant/defendant; and if so, 4) Is the proposed enforcement of the Controlled Substances Act the "least restrictive means" by which the Government can protect its "compelling governmental interest."[7]

The common "case specific" evidentiary thread linking all these relevant inquires together here, as in all other Ayahuasca-related RFRA cases in federal court, are the previously mentioned "case specific" facts about Mrs. Codi's beliefs and practices.[8]   Without such evidence, neither expert nor lay witness, on any related

---

[7] See *Gonzales v. O Centro Espirita Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006); *Church of Holy Light of Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009); *O Centro Espirita Beneficiente v. Ashcroft*, 342 F.3d 1170 (10th Cir. 2003); 42 U.S.C. § 2000bb-1.
[8] Id.

topic, will be able to provide testimony material to the resolution of the issues required to be addressed.

Despite the essential nature of the previously described evidence, and despite being alerted to the potentially religious nature of Mrs. Codi's Ayahuasca-related activities (i.e. potential for RFRA defense) even before she was arrested (her CBP file states she holds ayahuasca "retreats" in Peru and Georgia), the Government failed to take advantage of even one of the multitude of opportunities it had to acquire said evidence from the Defendant, under oath.  With that evidence, the Government would have been able to potentially acquire all the "case specific" evidence it would need, before it was required to file its Response to Defendant's Motion to Dismiss.

As a defendant, Mrs. Codi has effectively presented evidence to not only support her burden of showing, based upon a preponderance of the evidence, her Ayahuasca-based activities were a sincere "exercise of religion" which has been "substantially burdened" by the Government, but she has also presented expert evidence to preemptively rebut the Government's required demonstration regarding health and safety and diversion.  Here, the Government has failed to offer any material evidence-including any mention of the name or type of expert it intends to call to rebut the evidence offered by Mrs. Codi. In such circumstances, the Government is not entitled to an evidentiary hearing as such would be pointless-

there is no allegation or evidence, currently on record, which might call the propriety of Mrs. Codi's RFRA defense into question in any material way.

Here, the Government has made no offer of such evidence and should not be allowed to further infringe upon Mrs. Codi's personal freedom based upon mere arguments of its counsel and/or general conclusions allegedly reached by one of its investigators, as opposed to the existence and weight of its evidence.  Because the Government failed to acquire the requisite evidence needed to make an effective rebuttal and/or demonstration as required by it under RFRA, Mrs. Codi's statutory defense must prevail, and the pending indictment dismissed.

**A.     Mrs. Codi has met her burden of showing, based upon a preponderance of the evidence, that the Government's prosecution is substantially burdening her exercise of religion.**

To assert a defense to a criminal charge under RFRA, a defendant must make a showing, based upon a preponderance of the evidence, they were engaged in an "exercise of religion" which has been substantially burdened by the Government's action.[9]  Here, it is without question that Mrs. Codi, through her own affidavit and expert reports, has presented sufficient evidence to meet her relatively easy burden in proving entitlement to protection under the statute.

As previously stated, the Government has failed to use legal procedures available to it to acquire the evidence necessary to challenge Mrs. Codi's successful

---

[9] See 42 U.S.C. § 2000bb et seq; U.S. v. Meyers, 906 F. Supp. 1494, 1499 (D. Wyo. 1995).

invocation of her RFRA defense.  Despite its obvious failure, the Government now asserts entitlement to an evidentiary hearing; and does so without reference to any legal authority requiring such hearing to be held.

Putting the Government's claims of entitlement to an evidentiary hearing aside, the current evidentiary record does not justify a related hearing on the issues herein.  If the Government is unable at this time to make an indication of its ability to present the "case specific" evidence required by the statute,[10] then an evidentiary hearing would be futile.

While the Government's response brief contains several errors, one matter the brief does relate correctly, is the requirement that RFRA cases be decided on a case-by-case basis, analyzed after the Government makes a specific showing regarding the defendant's beliefs and practices. In the instant case, the Government has failed to investigate and acquire the facts necessary to present a "specific showing" sufficient to overcome Mrs. Codi's evidence (including the expert reports of Dr. Brad Stoddard[11] and Dr. Peter Hendricks[12]) which preponderates in favor of a finding that Mrs. Codi's Ayahuasca-based beliefs and resulting practices constitute an "exercise of religion" and that, due to the scientifically and historically-verified nature of the ayahuasca-induced primary religious/mystical experience, there is little chance that

---

[10] See 42 U.S.C. § 2000bb-2.
[11] See Doc # 32-1; 32-2.
[12] See Doc # 32-3; 32-4.

Mrs. Codi, or anyone in possession of ayahuasca, would have intentions unrelated to religious practice.

Considering the foregoing, the Government is not entitled, under case or statute, to an evidentiary hearing on the issue of Mrs. Codi's burden under RFRA, or any other matter at this juncture.  Simply put, the Government has not shown that it can procure and present the necessary evidence to prevail against Mrs. Codi's RFRA-based defense.

Lack of necessary evidence aside, even the facts contained in the Government's own discovery file indicate Mrs. Codi is sincere in her Ayahuasca-based beliefs and practices.  More specifically, the investigatory file included with the Government's discovery succinctly points out that Mrs. Codi regularly traveled to Peru with groups of congregants for communion with Ayahuasca in the presence of her religious elders in the Amazon Rainforest.  Additionally, it indicates that her Ayahuasca-based activities in the United States were limited to weekend long retreats in Georgia.

While the Government, in other parts of its brief, seem to want to try and point to the practices of the individuals comprising the Temple of Umi as a means of throwing doubt upon Mrs. Codi's sincerity and/or distribution methods, the Government has not indicted any of these individuals and entitlement of a RFRA defense is analyzed in relation to the person whose "exercise of religion" has been

"substantially burdened."[13]    Other individuals at Temple of Umi have not been indicted, are not seeking to raise a RFRA defense, and therefore their beliefs and/or practices are only tangentially relevant, at best, to the Court's assessment of Mrs. Codi's professed beliefs and practices.

As previously indicated in her Motion to Dismiss, the nature of Ayahuasca and the Ayahuasca experience are such that the likelihood of someone possessing or distributing Ayahuasca outside of the religious context would be very unlikely.[14] History, archeology, and anthropology have proven that Ayahuasca has been used as a religious sacrament by the Shipibo tribe, with whom Mrs. Codi is affiliated with and has visited on numerous occasions for religious ceremony and instruction, for thousands of years.  Moreover, Ayahuasca's historical usage is consistent with the overwhelming findings contained in the scientific and medical literature- that the primary religious/mystical nature of the experience reliably effectuated by Ayahuasca in procured set and settings (i.e. like the "ceremonies" and "retreats" the Government claims Mrs. Codi helped facilitate in Georgia).  Again, this Court need not take only Mrs. Codi's word regarding the religious and sincere nature of her Ayahuasca-based beliefs and practices, the relevant academic records also provide significant support in buttressing those assertions.

---

[13] See 42 U.S.C. § 2000bb-2.
[14] See Doc # 32-3; 32-4 (expert report and CV of Dr. Peter Hendricks).

Finally, while the Government states in the "compelling interest" section of its brief (perhaps mistakenly) that Temple of Umi and Mrs. Codi (by implication, not direct evidence) market or advertise their religious practice primarily as a means of obtaining relief from common mental and physical ailments, such a fact is wholly inconsequential to a religion or sincerity analysis.  Such confusion was cleared up by the U.S. 9th Circuit over 40 years ago in *Callahan v. Woods*.[15]  In *Callahan*, the Ninth Circuit held that, "[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one. In *Yoder* the Supreme Court warned that a belief that is based on "purely secular considerations" merits no protection under the free exercise clause. 406 U.S. at 215, 92 S.Ct. at 1532. It did not limit the scope of the First Amendment to "purely religious" claims; the area of overlap is presumably protected."[16]

Considering the foregoing, Mrs. Codi and/or Temple of Umi's beliefs and/or statements about the potential health/medical benefits arising from consuming Ayahuasca, in no way detracts from the attendant religious belief, which belief is firmly proven as fact in the scientific and medical literature, that Ayahuasca produces deep and profound, but transitory, primary religious/mystical experiences when

---

[15] 658 F.2d 679 (9th Cir. 1981).
[16] 658 F.2d at 684 (9th Cir. 1981) (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972)).

consumed in a sacred (specifically curated) set and setting (as has been done for over 3,000 years in the Amazon Rainforest).

In conclusion, because the evidence provided by Mrs. Codi provides ample support for the religious and sincere nature of her ayahuasca-based beliefs and practices, the Government was required to respond to her Motion with specific evidence regarding Mrs. Codi's beliefs and practices, along with an expert opinion of a quality necessary to effectively rebut Dr. Stoddard's and the other expert reports. Because the Government has failed to show up ready to make a showing sufficient to rebut the evidence proffered by Mrs. Codi as to the religious and sincere nature of her Ayahuasca-related beliefs and practices, the Court should find that Mrs. Codi has shown same by a preponderance of the evidence under RFRA and thereby entitled to free exercise protection under the statute.[17]

**B.    The Government has failed to present sufficient evidence to meet the demonstration required of it under the RFRA statute.**

Once Mrs. Codi makes the showing, as she has undoubtedly done here, that the Government's actions in indicting her on criminal charges related to ayahuasca-her religious sacrament-constitutes a substantial burden upon her religious exercise; then the burden switches to the Government to produce specific evidence which demonstrates Mrs. Codi's specific practices create a "compelling governmental

---

[17] See 42 U.S.C. § 2000bb et seq.

interest" sufficient for it to proceed with enforcement of the criminal provisions of the Controlled Substances Act and that such prosecution is the "least restrictive means" of doing so.[18]   As discussed in detail infra, the Government here only presents insufficient and conclusory statements of its investigators and arguments of counsel, thereby failing to provide any expert testimony in these regards, which is required in these cases under the statute.

To begin, the Government correctly states within its brief that it may not rely on "broadly formulated interests in justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific-exemptions of particular religious claimants."[19]   However, the Government incorrectly insinuates that religious practitioners have a duty to apply for an exemption from the DEA before gaining the ability to "legally" engage in their religious practice which involves otherwise scheduled substances.

While undersigned counsel respectfully does not agree with the holding in *Soul Quest Church of Mother Earth, Inc. v. Attorney Gen.*,[20] they do acknowledge the actual holding in *Soul Quest* regarding jurisdiction was based upon Soul Quest's folly in requesting the district court review the denial letter entered by the DEA, as

---

[18] See 42 U.S.C. § 2000bb-2; *Gonzales v. O Centro Espirita Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006).
[19] See *Gonzales v. O Centro Espirita Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006).
[20] 92 F.4th 953 (11th Cir. 2023).

opposed to seeking a lift of the stay to continue litigating its RFRA claim.[21]  Here,

Mrs. Codi never submitted any application to the DEA for a religious exemption, as

there is no basis in statute, in the constitution, or otherwise, for such a mandate any

time prior or subsequent to a religious practitioner engaging in their sincere religious

exercise.

If such were to be true, it would undoubtedly work as a prior restraint on Mrs.

Codi's free exercise rights and, to the extent the DEA claims jurisdiction through the

CSA, implicate very deep and troubling equal protection issues considering the only

exemption the DEA has ever willingly handed out was to the Native American

Church.[22]

Next, the Government has utterly failed to provide the case-specific expert

testimony needed to effectively show it has even a chance of rebutting the expert

evidence produced by Mrs. Codi.[23]  On the contrary, the Government has now shown

up to Court with nothing more than a bag of conclusory statements expressing their

opinion about Temple of Umi's (not a party to this case) religious beliefs and

practices.  Again, arguments of counsel and conclusion drawn by investigators about

a Church's membership process, without laying a factual or legal predicate for why

---

[21] Id. at 964.
[22] See *Olsen v. Drug Enforcement Admin*, 878 F.2d 1458 (D.C. Cir. 1989).
[23] See *Gonzales v. O Centro Espirita Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006).

Temple of Umi's beliefs and practices make any meaningful difference in this case, is not sufficient under the RFRA statute.

Considering the foregoing, it can hardly be said the Government has produced the requisite amount of case-specific evidence (i.e. facts about Mrs. Codi's religious beliefs and practices, and how that creates a compelling governmental interest) required of it to meet its demonstration under the statute. Merely stating these arguments and conclusions within its Response brief, does not win the day for the Government in this instance. The Government had plenty of time to investigate and acquire expert witnesses should it have felt this case compelling enough to do so.

In its brief, the Government discusses the Temple of Umi and its investigators' opinion about that Church's beliefs and practices related to distribution of its Sacrament. While Mrs. Codi is of the position that Temple of Umi's beliefs and practices are mostly irrelevant to the case at bar (i.e. the temple or its other members are not being indicted), she would also like to point out that the Government provides no legal citation as to why the cited facts are meaningful in terms of preventing diversion and/or defining religion/determining sincerity. Instead, the Government merely offers the statements to the Court, not in admissible form, and wants this Honorable Court to hold it entitled to an evidentiary hearing when the weight and quality of the evidence presented here obviously dictate a contrary result.

In any event, to the extent the Government's investigator wants to label Temple of Umi's operation a "business," Mrs. Codi believes that such a characterization would be unconstitutional to challenge her sincerity per the Supreme Court's holding in *Murdock v. Pennsylvania*.[24]   Alleging a Church is a "business" is both misleading and confusing, as all "churches" are non-profit corporations formed at the state level.   Moreover, churches and practitioners, under *Murdock* and its progeny, have a constitutional right to collect money in furtherance of their religious practice, without having the fact they are collecting money held against them for purposes of doubting their sincerity and/or the religious character of their activities.[25]   In short, any commercial activity tied to an otherwise religious exercise can not detract from the religiousness inherent in the underlying activity- here, engaging in a sacred Ayahuasca ceremony.   According to the Supreme Court in *Murdock*, there is no difference, religiously, between asking for donations through an offering plate or charging a sum certain for religious goods and services.[26]

The cases cited by the Government in support of its position in these regards, all involve either cannabis or heroin as alleged religious sacraments and the diversion implications of same.  However, here, the dimethyltryptamine possessed by Mrs. Codi at the time of her arrest was suspended in Ayahuasca, a long-known

---

[24] 319 U.S. 105 (1943).
[25] *Murdock*, 319 U.S. 105, 109-10 (1943).
[26] Id.

religious sacrament with serious emetic effects attached to its experience. Moreover, the cases cited by the Government involve scheduled substances which were distributed for use outside of the church or the church's services. Here, all those who received Ayahuasca through Mrs. Codi were required to remain with the group throughout a whole weekend retreat, with no one leaving the ceremony site with ayahuasca (DMT) in their possession.

The Government's own file proves that DMT distributed by Mrs. Codi and/or other leaders of the Temple of Umi in retreat/ceremony-style gatherings, not distributed for use outside of that context. The Government's assertion that Temple of Umi's process for screening potential ceremony congregants for religious sincerity is not sufficient and such assertion is supported by the conclusory, threadbare, and unattested opinion of one of its investigators, not any religion or diversion expert.

Also, it seems incredible that a person who has never engaged in Ayahuasca-based religious practices, considering the experiential nature of the Sacrament and attendant religious beliefs and practices, could with honest sincerity claim belief in any of the religion's specific beliefs and practices without first having the Ayahuasca experience. As such, it seems the government's insinuation (that congregants be screened for sincerity) would actually favor insincerity since it forces those who

don't have a belief or faith either way to attest falsely to beliefs they unlikely could have acquired without consuming Ayahuasca specifically.

There are other very well-established and long-standing religious sects within the U.S. which openly break the law during their services and yet never pass around a questionnaire challenging the sincerity of each person's beliefs.  As such, the notion that such would be required by Mrs. Codi and/or Temple of Umi, but not other well-entrenched religious sects, obviously implicate very deep equal protection issues.  Considering the foregoing, the Government has now proven its inability to provide any meaningful evidence in support of its required demonstration under the RFRA statute.

In prior federal cases (civil) (RFRA) wherein ayahuasca and its potential diversion were at issue, the Government was unable, as required by RFRA's plain terms, to demonstrate that risk of diversion of ayahuasca creates a "compelling governmental interest" sufficient to justify its outright ban on the practitioners' Ayahuasca-based religious activities.[27]   In these cases, the Government was unable to pass muster under its own experts' standard for determining the risk of liability in such situations.[28]

---

[27] See O Centro Espirita Beneficiente v. Ashcroft, 342 F.3d 1170 (10th Cir. 2003);*Church of the Holy Light of Queen v. Mukasey*, 615 F. Supp. 2d 1210, *17 (D. Or. 2009).
[28] Id.

Considering the foregoing, this case is easily and obviously distinguishable. Unlike the Government in prior cases,[29] here, the Government has failed to even elucidate a standard by which diversion risk should be adjudged, much less an expert to lend some "case specific" credibility to the expert's opinion, in this matter, as required by statute.   In fact, the Government has failed to even offer any mention (kind, type, name, etc) of bringing an appropriate expert to attempt and meet its required demonstration under the statute-- a "demanding burden."[30]

Assuming *arguendo* the Government had met its burden and further, its expert would stand by the analysis elucidated by its experts in prior cases, then the Court would analyze diversion using the following factors: existence of an illicit market, the presence of marketing or publicity, the form of the substance, and the cost and opportunity for diversion.[31] Additionally, the district court in *O Centro* considered the availability of pharmacological equivalents and whether the emetic (negative) side effects of Ayahuasca would affect a persons desire to use it recreationally.[32]

Previously, under this analysis, the Government was unable to tip the scales to any measurable degree (even with experts) and in fact, the court believed the religious practitioners had tipped them slightly in their favor.  In either event, the

---

[29] Id.
[30] *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 728 (2014).
[31] *O Centro*, 342 F.3d at 1182-83 (10th Cir. 2003).
[32] Id.

Government was unable to make the demonstration required of it under RFRA.  In this case, since the Government has failed to proffer any expert testimony regarding diversion, it has essentially failed to place any evidence on the scale.  Accordingly, the balance must tip in favor of Mrs. Codi's RFRA defense.

Here, the Government has failed to even allege the existence of, much less a "thriving," illicit[33] market for Ayahuasca (there is none); the Government makes no allegations accusing Mrs. Codi of aggressively or widely marketing or promoting her Ayahuasca-based religious activities, as no such evidence exists; the Government and Dr. Leanna Standish agree that the actual substance seized was Ayahuasca (containing DMT) and prior cases have held Ayahuasca is generally bulky in form (paste/liquid) and not easily concealable; the Government's own statements and evidence clearly show no diversion ever occurred- as all of Mrs. Codi's Ayahuasca-related religious services required congregants to remain in a highly circumscribed (and sacred) setting for weekend-long retreats.

The Government in this case is unable to demonstrate, under the facts, that any individual(s) participating in Mrs. Codi's religious rituals ever left her retreats with DMT, or any other controlled substance.  Nor have they even alleged as much. To the contrary, the evidence clearly shows consumption of DMT was limited to a

---

[33] See *United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016) (Court noted "thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca (Ayahuasca)").  The Government cites this exact proposition in its Response brief but fails to show any market exists for diverted Ayahuasca.

highly circumscribed environment via sacred rituals and ceremonies over the course of a weekend. This is not a case where the potential for diversion rises to the level of a "compelling governmental interest." In fact, there is no way the Government could prove a "compelling governmental interest" under the current evidentiary record-- it is void of the "case specific" evidence and analysis needed to meet the Government's burden under RFRA.

Finally, Ayahuasca has the same, if not more, easily available pharmacological equivalents (both plant and pharmaceutical substitutes) than it did when *O Centro* was litigated in 2003. Moreover, these pharmacological equivalents are mostly void of the emetic side effects inherent in the consumption of Ayahuasca. Therefore, those equivalents would be the easiest and most desirable route for those who seek to use a DMT/MAOI combo "recreationally"-- if such recreational use is even possible.

Put bluntly, those seeking to get their DMT "kicks" through consuming Ayahuasca will be in for a rude awakening once consumed. The side effects from Ayahuasca are consistent and emetic in nature. Therefore, it is safe for the Court to assume that, to the extent there are non-religious seekers of DMT and/or some DMT/MAOI combination, Ayahuasca would be their last resort, as its side effects make it the least desirable out of all the known and available methods for an alleged "recreational" user to consume DMT. This was so in 2003, and it is so today in 2025.

Religious use of DMT has been consummated by indigenous tribes in the Amazon Rainforest, and in other places around the globe, for at least the last 3,000 years. The sacramental consumption of entheogens, such as Ayahuasca or psychoactive mushrooms, is a "universal religious heritage of humanity."[34]

**C.      The Government has been unable to rebut Mrs. Codi's prima facie case proving selective enforcement and selective prosecution**

Simply put, the Government's characterization of the evidence supporting Mrs. Codi's allegations of selective enforcement and prosecution is completely erroneous and misplaced. Mrs. Codi pointed to cases occurring across the country over the last twenty-five years in buttressing her assertions in these regards. The facts of the *Soul Quest* case,[35] as elucidated into the judicial record by the Government there, are wholly inconsistent with the Government's statements and characterizations contained in the Response brief.

Considering the foregoing, the defendant continues to stand by her arguments and evidence presented in her Motion to Dismiss the indictment. The facts of the *Soul Quest* case provide the most local, yet also the most glaring example of selective prosecution in this matter.

---

[34] Michael Winkelman, *Introduction: Evidence for Entheogen Use in Prehistory and World Religions*, 3 **J. Psychedelic Stud.** 43 (2019), https://doi.org/10.1556/2054.2019.024.

[35] *See Soul Quest Church of Mother Earth, et. al. v. Attorney General, United States of America, et. al.*, Case No. 6:20-cv-701-WBB-DCI (M.D. Fla. Apr. 22, 2020).

## **CONCLUSION**

In conclusion, Mrs. Codi has effectively presented competent evidence to both support her burden under the statute and preemptively rebut the Government's required demonstration as well.  Unfortunately for the Government, it has not shown its ability to effectively acquire and properly assert the evidence needed to prevent dismissal of the indictment under RFRA.  As such, Mrs. Codi respectfully requests that this Honorable Court **GRANT** her Motion to Dismiss the Indictment pursuant to the federal Religious Freedom and Restoration Act of 1993.


Respectfully Submitted,


*/s/ George G. Lake, Esq.*

George "Greg" Lake, Esq.
Trial and Appellate Attorney
411 E. Merritt
Marshall, Texas 75670
Phone: (225) 368-7108
George.lake.la@gmail.com


*/s/ Jason L. Wollitz*

Jason L. Wollitz, Esq.
One Independence Plaza
Suite 305
Homewood, Alabama 35209
205-541-6033
jasonwollitz@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

**COMES NOW, Jason L. Wollitz, Attorney at Law,** and do hereby certify that on the 17th day of March, 2025 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record.

Respectfully Submitted,


*/s/ George G. Lake, Esq.*

George "Greg" Lake, Esq.
Trial and Appellate Attorney
411 E. Merritt
Marshall, Texas 75670
Phone: (225) 368-7108
George.lake.la@gmail.com


*/s/ Jason L. Wollitz*

Jason L. Wollitz, Esq.
One Independence Plaza
Suite 305
Homewood, Alabama 35209
205-541-6033
jasonwollitz@gmail.com